No. 5:26-cv-3491

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

In re Whitehall Manor, Inc.,

*Debtor*,

Lehigh Valley 1, LLC,

*Appellant*.

*On Appeal from the Order of the United States Bankruptcy Court for the Eastern District of Pennsylvania Denying Lender and Receiver's Joint Motion to Compel the Manor Debtors to Assume or Reject Their Leases, to Establish the Cure Amount, and in the Alternative, for Relief from the Automatic Stay, No. 25-15245 (PMM)*

## JOINT ANSWERING BRIEF OF APPELLEES
## WHITEHALL TRUST AND SAUCON TRUST

Natalie D. Ramsey
Rachel Jaffe Mauceri
ROBINSON & COLE LLP
1650 Market Street, Suite 3030
Philadelphia, PA 19103
Tel.: (215) 398-0600
nramsey@rc.com
rmauceri@rc.com

Eric Del Pozo
(*pro hac vice motion pending*)
ROBINSON & COLE LLP
One State Street
Hartford, CT 06103
Tel.: (860) 275-8200
edelpozo@rc.com

*Counsel for Appellees Whitehall Trust and Saucon Trust*

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 8012 of the Federal Rules of Bankruptcy Procedure, Appellees Whitehall Trust and Saucon Trust state that neither has a parent corporation, that no publicly held corporation owns 10% or more of either's stock, that the trustee of Whitehall Trust is Whitehall Fiduciary LLC, owned and managed by Abraham Atiyeh, and that the trustee of Saucon Trust is Saucon Management LLC, owned and managed by Abraham Atiyeh.

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................... ii

PRELIMINARY STATEMENT ........................................................................1

FACTUAL AND PROCEDURAL BACKGROUND ...............................................5

   I.  Facing Financial Distress, the Trusts and Manors File for Chapter 11
      Bankruptcy Protection. ........................................................................5

   II.  Lehigh and the Receiver Unsuccessfully Invoke Statutory Rights
      Belonging to the Trusts .......................................................................6

STANDARD OF REVIEW & SUMMARY OF ARGUMENT ...............................10

ARGUMENT ...............................................................................................13

   I.  The Bankruptcy Court Did Not Abuse Its Discretion in Holding
      Derivative Standing Unavailable to Appellants to Act for the Trusts. ..........15

      A.  The Bankruptcy Court Appropriately Denied the Receiver's
         Request for Derivative Standing .................................................15

      B.  Lehigh's Request for Derivative Standing Is Forfeited on
         Appeal and Was Appropriately Rejected. ....................................20

      C.  Appellants Also Failed to Demonstrate that the Proposed
         Motions Are Sufficiently Meritorious ..........................................23

   II.  Appellants Have Not Satisfied the Unjust-Refusal Requirement of
      Derivative Standing ...........................................................................23

CONCLUSION ............................................................................................31

# TABLE OF AUTHORITIES

**Page**

**Cases**

*In re Alcide*,
450 B.R. 526 (Bankr. E.D. Pa. 2011) ....................................................................22

*In re AppliedTheory Corp.*,
493 F.3d 82 (2d Cir. 2007) ....................................................................................26

*Baron & Budd, P.C. v. Unsecured Asbestos Claimants Comm.*,
321 B.R. 147 (D.N.J. 2005) ....................................................................................20

*In re Bodenheimer, Jones, Szwak, & Winchell, LLP*,
592 F.3d 664 (5th Cir. 2009) ..................................................................................17

*In re Bohn*,
2015 WL 2415412 (Bankr. D.N.J. 2015) ................................................................19

*In re Caesars Entmt. Operating Co.*,
561 B.R. 457 (Bankr. N.D. Ill. 2016) ......................................................................27

*In re DeCurtis Holdings, LLC*,
2023 WL 5274925 (Bankr. D. Del. 2023) ................................................................14

*In re Energy Future Holdings Corp.*,
904 F.3d 298 (3d Cir. 2018) ....................................................................................20

*Fogel v. Zell*,
221 F.3d 955 (7th Cir. 2000) ..................................................................................24

*In re G-I Holdings, Inc.*,
313 B.R. 612 (Bankr. D.N.J. 2004) ..........................................................................26

*In re Gibson Grp.*,
66 F.3d 1436 (6th Cir. 1995) ..................................................................................24

*Gilchrist v. Gen. Elec. Cap. Corp.*,
262 F.3d 295 (4th Cir. 2001) ..................................................................................16

*In re Hayes*,
393 B.R. 259 (Bankr. D. Mass. 2008) ......................................................................22

*In re Hechinger Inv. Co. of Del.*,
   298 F.3d 219 (3d Cir. 2002) ...........................................................................10

*In re Invitae Corp.*,
   2025 WL 2314691 (D.N.J. 2025) .....................................................14, 25, 26

*In re James Wilson Assocs.*,
   965 F.2d 160 (7th Cir. 1992) ..........................................................................21

*In re Kane*,
   628 F.3d 631 (3d Cir. 2010) ...........................................................................16

*La. World Exposition v. Fed. Ins. Co.*,
   858 F.2d 233 (5th Cir. 1998) ..........................................................................24

*Law v. Siegel*,
   571 U.S. 415 (2014).........................................................................................19

*In re Asbestos Prods. Liab. Litig. (No. VI)*,
   873 F.3d 232 (3d Cir. 2017) ...........................................................................21

*In re Lifeco Inv. Grp.*,
   173 B.R. 478 (Bankr. D. Del. 1994).................................................................17

*In re Mallinckrodt PLC*,
   2024 WL 206682 (Bankr. D. Del. 2024)..........................................................19

*In re Manley Toys Ltd.*,
   2020 WL 1580244 (Bankr. D.N.J. 2020) ........................................................29

*In re Marvel Entmt. Grp.*,
   140 F.3d 463 (3d Cir. 1998) ...........................................................................16

*In re Motions for Access of Garlock Sealing Techs. LLC*,
   488 B.R. 281 (D. Del. 2013) (Stark, C.J.) ......................................................27

*In re MRPC Christiana, LLC*,
   2019 WL 6652237 (Bankr. D.N.J. 2019) .........................................................14

*In re Murray Metallurgical Coal Holdings, LLC*,
   614 B.R. 819 (Bankr. S.D. Ohio 2020) ...........................................................27

*In re Nat'l Forge Co.*,
326 B.R. 532 (W.D. Pa. 2005)......................................................................14

*Off. Comm. of Unsecured Creditors of Cybergenics Corp. v. Chinery*,
330 F.3d 548 (3d Cir. 2003) .............................................................13, 19, 24

*Off. Comm. of Unsecured Creditors of Sunbeam Corp. v. Morgan
Stanley & Co. (In re Sunbeam Corp.)*,
284 B.R. 355 (Bankr. S.D.N.Y. 2002)......................................................28

*In re Ozark Rest. Equip. Co., Inc.*,
816 F.2d 1222 (8th Cir. 1987) ...............................................................13

*In re Plantation Inn Partners*,
142 B.R. 561 (Bankr. S.D. Ga. 1992)......................................................17

*In re Racing Servs., Inc.*,
540 F.3d 892 (8th Cir. 2008) ................................................................24

*In re Mou San Rim*,
2010 WL 4615174 (D.N.J. 2010) ..........................................................10

*In re Riverside Nursing Home*,
43 B.R. 682 (Bankr. S.D.N.Y. 1984)......................................................21

*In re Sabine Oil & Gas Corp.*,
547 B.R. 503 (Bankr. S.D.N.Y. 2016)....................................................29

*In re STN Enters.*,
779 F.2d 901 (2d Cir. 1985) ................................................................24

*In re Terry*,
543 B.R. 173 (E.D. Pa. 2015)...............................................................25

*Tourscher v. McCullough*,
184 F.3d 236 (3d Cir. 1999) .................................................................11

*In re Vantage Drilling Int'l*,
603 B.R. 538 (D. Del. 2019)..................................................................22

*Village of Overland Point, LLC v. Terra Bentley II, LLC (In re Terra
Bentley II, LLC)*,
2011 WL 808190 (Bankr. D. Kan. 2011) ...............................................29

*Westmoreland Hum. Opportunities, Inc. v. Walsh*,
   246 F.3d 233 (3d Cir. 2001) ...............................................................................26

*In re Whitehall Trust*,
   2026 WL 788683 (Bankr. E.D. Pa. 2026) ...........................................................7

*Will v. Northwestern Univ. (In re Nutraquest, Inc.)*,
   434 F.3d 639 (3d Cir. 2006) ...............................................................................10

*In re Wilton Armetale, Inc.*,
   968 F.3d 273 (3d Cir. 2020) ........................................................................13, 21

**Statutes**

11 U.S.C. § 101 ......................................................................................................8

11 U.S.C. § 105 ...............................................................................................*passim*

11 U.S.C. § 362 ...............................................................................................*passim*

11 U.S.C. § 365 ...............................................................................................*passim*

11 U.S.C. § 541 .............................................................................................13, 16

11 U.S.C. § 543 ...............................................................................................*passim*

11 U.S.C. § 1107 ...................................................................................................13

**Other Authorities**

Fed. R. Evid. 201 .................................................................................................27

## ORAL ARGUMENT STATEMENT

Appellees believe that oral argument will materially assist the Court in resolving the issues presented in this appeal.

## PRELIMINARY STATEMENT

In this appeal, the two Appellants—a secured creditor and a court-appointed prebankruptcy receiver—challenge a decision of the Bankruptcy Court (Patricia M. Mayer, J.) rejecting their attempt to deploy a procedure known as "derivative standing" in an unorthodox, impermissible, and potentially unprecedented way. If their desired relief is granted, Appellants ostensibly would act "derivatively" in the name of—i.e., stand in the shoes of—landowners and Chapter 11 debtors-in-possession Whitehall Trust and Saucon Trust (the "Trusts"), with the goal of ousting their affiliated tenants and fellow Chapter 11 debtors-in-possession, Whitehall Manor, Inc., and Saucon Valley Manor, Inc. (the "Manors"), from the real properties on which the latter entities operate licensed personal care homes for senior residents.

The net effect would severely destabilize all these entities, likely jeopardizing any chance of a successful Chapter 11 reorganization under the currently pending joint plan—while a related, important appeal is underway to resolve whether the Trusts are eligible for bankruptcy protection. The Trusts oppose the proposed derivative action. The Bankruptcy Court properly rejected it. This Court should affirm.

As the Court is aware, the Trusts respectively own and have leased to the Manors the real properties in question. In prebankruptcy foreclosure cases brought by secured creditor Lehigh Valley 1, LLC ("Lehigh"), this Court appointed Duane Morris LLP, through Erin Duffy, Esq., as these properties' receiver (the "Receiver"). Lehigh and the Receiver are the Appellants here.

Prompting the current dispute, the Bankruptcy Court held the Trusts to be ineligible for Chapter 11 debtor status and thus dismissed their bankruptcy cases. After that ruling, Lehigh and the Receiver quickly moved in the Bankruptcy Court (i) to compel the Manors to assume (i.e., accept as enforceable) or reject their leases with the Trusts, if the leases were unexpired; or (ii) alternatively, if the leases were deemed already to have expired, to grant relief from the automatic stay (which generally prevents commencing or continuing judicial actions against a debtor in bankruptcy), for the purpose of evicting the Manors from the properties.

If realized, any of these outcomes would trigger significant consequences. The act of assuming the leases may require the Manors to "cure" accrued but unpaid rent charges. If the Manors did not fulfill those obligations, or if they rejected the leases, or if the automatic stay protecting them were lifted, then Appellants (as they have promised) likely would seek to eject the Manors from the care homes. The Manors would then lack facilities to operate. Without qualified and licensed tenants, the

properties—and the Trusts—would face grave uncertainty, as would the senior residents who stand to lose their homes.

But the Bankruptcy Court stayed the Trusts' Chapter 11 dismissals pending appeal, effectively suspending this hostile takeover. The stay has preserved the Trusts' Chapter 11 debtor-in-possession status. While the dismissal appeals proceed, the Trusts continue to possess and manage the properties, and they remain protected by the bankruptcy automatic stay as well.

So, Appellants have redesigned their requested relief on the fly. In an argument raised for the first time in their reply brief below (and not in their initial motion), they seek the same relief, except now "derivatively" (or in place of the Trusts), rather than directly (or in their own capacities). They seek derivative standing to act in the Trusts' place because the Bankruptcy Code does not otherwise permit either of these Appellants to inject itself into such a putative lease dispute as between debtors in bankruptcy.

This appeal solely focuses on the request for derivative standing. That theory was and is unavailing. In general, a grant of derivative standing enables creditors to pursue a cause of action that a bankruptcy trustee has unjustifiably refused to pursue, but that would benefit the bankruptcy estate at large. Here, Appellants fail to cite a single prior authority allowing someone derivatively to move to compel a bankruptcy debtor to assume or reject an unexpired lease, or to remove a debtor's

automatic-stay protection. That stands to reason. These requests are not typically understood as causes of action that bankruptcy trustees pursue against others, but rather as motions that others pursue against bankruptcy trustees, to demand specific action or to obtain property *from* the estate.

The unusual request here seeks to pursue such action for one debtor against another. Appellants would thus wield derivative standing to short-circuit jointly administered, multi-debtor bankruptcy proceedings. In the end, however, Appellants do not satisfy the exacting requirements for derivative standing. As the Bankruptcy Court concluded, Appellants either invoked the wrong statutes or are the wrong stewards for the relief they now seek. On appeal, they challenge only certain of these determinations. In addition, they failed to create the necessary evidentiary record to support a finding that the motions they would bring will actually benefit, rather than impede, the Trusts' efforts at a successful reorganization. The Bankruptcy Court's rejection of this theory of standing constituted a proper exercise of discretion.

**FACTUAL AND PROCEDURAL BACKGROUND**

**I.  Facing Financial Distress, the Trusts and Manors File for Chapter 11 Bankruptcy Protection.**

As relevant to this dispute, the Trusts historically leased their real properties to the Manors under lease agreements, initially effective as of August 14, 2008 (for Whitehall Manor), and as of January 1, 2006 (for Saucon Valley Manor), each later subject to successive amendments. (*See* App. 75-165.[1]) Under these leases, the Manors bore ultimate responsibility for paying for maintenance, property taxes, insurance, and operating expenses. (*See* App. 88, 120.)

As the Bankruptcy Court recounted: "In February of 2021, the Manors stopped paying the full amount of rent due under their leases with the Trusts," and "[t]hereafter, the Trusts were unable to voluntarily service their mortgages." Order dated May 15, 2026 ("Order") at 1. (App. 23.)

In September 2023, the Trusts and Manors entered into lease amendments that, among other things, forgave past-due rent obligations from March 2021 through September 2023, and waived rent for 2024 (the "Lease Amendments"). (App. 157-165.) These amendments also extended each lease's term through 2028. (App. 158, 164.)

---

[1] All references to "App." are to the Appellants' Appendix filed at ECF No. 5-1.

In June 2024, Lehigh—as the current holder of the mortgage notes and security agreements relating to the Trusts' properties—instituted foreclosure actions against the Trusts in this Court. *See* Case No. 24-cv-2627 (CH) (Whitehall Trust foreclosure action) & No. 24-cv-2709 (CH) (Saucon Trust foreclosure action) (E.D. Pa.). In May 2025, on Lehigh's application, this Court entered an order appointing the Receiver to manage the properties (the "Receivership Order"). (App. 541-556.) Among other things, the Receivership Order authorized the Receiver to take possession of and preserve the properties, collect rents, and bring actions to evict tenants or occupants under applicable law. (App. 543-549.)

On December 19, 2025, this Court entered an order declaring the Lease Amendments to be null and void. (App. 167-169.) One week later, the Manors and the Trusts filed for Chapter 11 bankruptcy protection in the U.S. Bankruptcy Court for the Eastern District of Pennsylvania.[2]

## II. Lehigh and the Receiver Unsuccessfully Invoke Statutory Rights Belonging to the Trusts

A month into these bankruptcy proceedings, Lehigh moved to dismiss the Trusts' Chapter 11 cases on the asserted ground that neither Trust is a "business trust" within the meaning of 11 U.S.C. § 101(9)(A)(v), thus rendering them ineligible for

---

[2] The Receiver has asserted that Saucon Valley Manor owes $8,460,843.01 in accrued prepetition rent to Saucon Trust, and that Whitehall Manor owes $8,271,961.00 in accrued prepetition rent to Whitehall Trust. (App. 50.) The Debtors dispute these amounts' accuracy. (*See, e.g.*, App. 450.)

bankruptcy protection. On March 19, 2026, the Bankruptcy Court dismissed the Trusts' bankruptcy cases on that basis. *See In re Whitehall Trust*, 2026 WL 788683 (Bankr. E.D. Pa. 2026). Four days later, on May 23, 2026, the Trusts filed an emergency motion asking the Bankruptcy Court to stay the dismissals pending appeal.[3] *See* Case No. 25-bk-15245 (PMM) (Bankr. E.D. Pa.), ECF No. 30.

Rather than await a decision on the stay motion, Lehigh and the Receiver together filed a motion of their own. On March 31, 2026, they jointly moved in the Bankruptcy Court for an order variously compelling the Manors to assume or reject their leases under 11 U.S.C. § 365(d)(2), establishing a cure amount to assume the leases, or lifting the automatic stay under 11 U.S.C. § 362(d) for the purpose of possessing the properties and proceeding against the Manors. (App. 35-74.)

Three days later, on April 2, 2026, the Bankruptcy Court stayed its Order dismissing the Trusts' Chapter 11 cases pending appeal.[4] *See* Order, Case No. 25-bk-15241 (PMM) (Bankr. E.D. Pa.), ECF No. 274; *see also* Hr'g Tr. at 3 (Apr. 2, 2026), Case No. 25-bk-15245 (concluding, among other things, that the appeals have a reasonable chance of success).

---

[3] The Trusts timely appealed the dismissals to this Court. *See* Case No. 26-cv-2170 (CH) & 26-cv-2211 (CH) (E.D. Pa.). Via the Bankruptcy Court's separate order certifying the issues involved for a direct appeal to the Third Circuit, the Trusts filed petitions in the Circuit for permission to appeal, which currently await a decision.

[4] This Court has since denied Lehigh's motion to vacate the stay pending appeal entered by the Bankruptcy Court. *See* Case No. 26-cv-2170, ECF No. 35 & 26-cv-2211, ECF No. 34.

The Manors and the Trusts then opposed Lehigh's and the Receiver's motion on the ground, among others, that neither movant had standing to seek to compel the Manors to take action regarding the leases. (App. 423-459.) In an ensuing reply submission, Lehigh and the Receiver for the first time argued that they should be accorded "derivative standing" to enforce the Trusts' alleged rights in bankruptcy against the Manors, through the Bankruptcy Court's discretionary authority under 11 U.S.C. § 105(a). (App. 557-575.)

On May 15, 2026, after hearing argument, the Bankruptcy Court denied the motion. (*See* App. 22-34.) In that Order, the Bankruptcy Court confirmed that, given the stay pending appeal, "the Trusts remain 'SARE' [i.e., Single Asset Real Estate[5]] debtors in possession while their dismissals are on appeal," and thus that the "Manor Properties remain property of the Trusts' estates, subject to the protection of the automatic stay." Order at 6. (App. 28.)

Turning to the merits, the Bankruptcy Court denied the branch of the motion seeking to compel lease assumption or rejection under section 365(d)(2), on the grounds that (i) Lehigh lacks standing to bring such a motion because it is not a "party to" the leases, as that section requires; and that (ii) although the Receiver could be functionally considered a party to the leases, the Bankruptcy Code and stay pending appeal precluded such a motion because under 11 U.S.C. § 543, "the

---

[5] *See* 11 U.S.C. § 101(51B) (defining "single asset real estate" debtor).

Receiver qualifies as a 'custodian' obligated to turn over—and refrain from administering—property of the Trusts or their estates." *Id.* at 7-8 (citing 11 U.S.C. §§ 101(11)(A), 543(a)-(b). (App. 29-30.)

The Bankruptcy Court also denied the movants' request for relief from the automatic stay under 11 U.S.C. § 362(d) to proceed to evict the Manors. In this regard, the court analogously concluded that (i) even if the leases had expired, Lehigh as a mortgagee could not seek to evict the mortgagor's alleged holdover tenant; and that (ii) the Receiver was blocked by "the admixture of § 543 and the Stay Order, whereby the Manor Properties are off limits to the Receiver while they remain property of the Trusts' estates." *Id.* at 10-11. (App. 32-33.)

Finally, the Bankruptcy Court "decline[d] the Movants' invitations to afford them derivative standing pursuant to § 105(a)" of the Bankruptcy Code. *Id.* at 11. (App. 33.) After discussing this procedure's requisite elements, the Bankruptcy Court denied derivative standing to Lehigh and the Receiver because (i) Lehigh "failed to establish that it can evict the Manors," and (ii) the Receiver "failed to timely pursue another, more traditional means at her disposal for obtaining the kind of standing she now seeks," via request under 11 U.S.C. § 543(d).[6] *Id.* at 12. (App.

---

[6] Section 543(d) allows a custodian such as the Receiver to move for relief from that section's other provisions, which if granted would permit the Receiver to administer the property at issue. *See* 11 U.S.C. § 543(d)(1).

34.) As that court added, any "general authority under § 105(a) must yield to th[e] specific" provisions "found in § 543." *Id.* (App. 34.)

Lehigh and the Receiver then filed this appeal, which their opening brief has limited to the derivative-standing question. *See* Joint Opening Br. at 6, ECF No. 5 ("Appellants' Br.").[7]

## STANDARD OF REVIEW & SUMMARY OF ARGUMENT

Federal Rule of Bankruptcy Procedure 8013 provides that a district court "may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." A bankruptcy court's exercise of its equitable power in deciding a motion for derivative standing is reviewed only for an abuse of discretion. *See, e.g.*, *In re Mou San Rim*, 2010 WL 4615174, at *2 (D.N.J. 2010). The same is generally true of the Bankruptcy Court's decision whether to exercise its authority under 11 U.S.C. § 105(a). *See In re Hechinger Inv. Co. of Del.*, 298 F.3d 219, 224 (3d Cir. 2002).

Under this deferential standard of review, an abuse of discretion "must rest on a clearly erroneous finding of fact, an errant conclusion of law, or an improper application of law to fact." *Will v. Northwestern Univ. (In re Nutraquest, Inc.)*, 434 F.3d 639, 645 (3d Cir. 2006) (internal quotation marks omitted). Moreover, this

---

[7] By order entered on July 10, 2026, this Court confirmed that Whitehall Trust and Saucon Trust are Appellees with full participation rights in this appeal. *See* Order, ECF No. 11.

Court can "affirm the [bankruptcy] court on any ground supported by the record." *Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999).

The Bankruptcy Court did not abuse its discretion in rejecting Appellants' request for derivative standing to move on behalf of the Trusts to compel the Manors to assume or reject their leases under 11 U.S.C. § 365(d)(2), or for automatic-stay relief against the Manors under 11 U.S.C. § 362(d). Its decision should be affirmed for the following reasons.

I.A.     The Bankruptcy Court appropriately exercised its discretion in rejecting the Receiver's derivative-standing request. The Receiver failed timely to take advantage of an express statutory provision, 11 U.S.C. § 543(d), which allows prebankruptcy custodians of a debtor's property, such as the Receiver here, to move for an order permitting the custodian to take action to administer the property if certain requirements are met. Section 105(a) of the Bankruptcy Code—on which Appellants based the derivative-standing request—affords no relief where, as here, an express statutory provision in the Code governs the matter. Having failed for months to seek relief under section 543(d), the Receiver cannot repackage that omitted request as one for derivative standing under section 105(a).

I.B.     Appellants do not specifically challenge the denial of derivative standing to Lehigh, forfeiting this point for purposes of appeal. In any event, the

Bankruptcy Court did not abuse its discretion in declining to authorize Lehigh, a mortgagee and nonparty to the leases, to pursue the proposed relief for the Trusts.

I.C. Appellants also lack a colorable claim for relief on the merits of their underlying motions, as explained in the Manors' brief to this Court.

II. Appellants have failed to demonstrate that the Trusts unjustifiably refused to pursue the proposed motions. Appellants did not formally demand that the Trusts take this action, await a refusal, or otherwise develop a factual record to support a finding that pursuing the motions would benefit, rather than impair, the Trusts' bankruptcy estates. The Bankruptcy Court did not make any findings on these points, nor do Appellants cite record proof that would support, let alone compel, a grant of derivative standing. The resulting evidentiary gaps preclude relief.

If this Court were to reach the issue, the record does not establish that the requested litigation would benefit the Trusts' estates, as opposed to Appellants' individual interests in gaining control of the Trusts' property without regard to the impact on those estates. The Trusts and Manors have filed a joint Chapter 11 plan of reorganization directed towards emergence from bankruptcy and distributions to creditors, and the leasehold arrangements may be central to those efforts. The Trusts and Manors have also sought authority in the Bankruptcy Court to enter into mutually beneficial use and occupancy agreements. Forcing the Manors to cure millions of dollars in alleged rent obligations or else face eviction could eliminate

the Trusts' sole tenants, jeopardize the personal care home operations, and undermine, rather than advance, these intended reorganization efforts.

## ARGUMENT

The filing of a petition under Chapter 11 of the Bankruptcy Code creates an estate that includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Causes of action that belong to a debtor as of a bankruptcy filing are property of the bankruptcy estate. *E.g.*, *In re Wilton Armetale, Inc.*, 968 F.3d 273, 280 (3d Cir. 2020); *In re Ozark Rest. Equip. Co., Inc.*, 816 F.2d 1222, 1225 (8th Cir. 1987). However, in certain limited circumstances, a bankruptcy court may grant "derivative standing" to creditors to litigate claims on behalf of a debtor's estate.[8] *See Off. Comm. of Unsecured Creditors of Cybergenics Corp. v. Chinery*, 330 F.3d 548, 580 (3d Cir. 2003) (holding that §§ 105(a), 503(b)(3)(B), 1103(c)(5) and 1109(b) of the Bankruptcy

---

[8] For this purpose, this brief will use "trustee" to refer to the representative authorized to act for the estate, inclusive of a debtor-in-possession. *See* 11 U.S.C. § 1107(a) (stating that, subject to certain limitations, a debtor-in-possession "shall perform all the functions and duties" of a trustee in bankruptcy).

Code together permit "bankruptcy courts [to] authorize creditors' committees to sue derivatively to avoid fraudulent transfers for the benefit of the estate").

Granting derivative standing is "uncommon" and "'the exception rather than the rule.'"[9] *In re DeCurtis Holdings, LLC*, 2023 WL 5274925, at *4 & n.43 (Bankr. D. Del. 2023) (quoting *In re Merritt*, 711 F. App'x 83, 86 (3d Cir. 2017)). In general, a movant may obtain derivative standing by (i) demonstrating that the trustee has unjustifiably refused to pursue a particular claim, (ii) showing that the claim is colorable on the merits, and (iii) securing leave from the bankruptcy court to prosecute the action for and in the name of the trustee. *See, e.g.*, *In re Invitae Corp.*, 2025 WL 2538952, at *9 (D.N.J. 2025). The applicant bears the burden of proving that derivative standing's prerequisites are met. *In re MRPC Christiana, LLC*, 2019 WL 6652237, at *10 (Bankr. D.N.J. 2019). Appellants have failed to satisfy these requirements.

---

[9] Within this Circuit, arguments for derivative standing appear most frequently in the context where the doctrine was recognized: for claims to avoid alleged fraudulent transfers of assets, for the bankruptcy estate's benefit. *See, e.g.*, *In re Nat'l Forge Co.*, 326 B.R. 532, 542 (W.D. Pa. 2005) ("In C*ybergenics II*, the Third Circuit held that bankruptcy courts, pursuant to their equitable powers, can confer upon creditors' committees derivative standing to bring avoidance actions for the benefit of the estate when the debtor fails to do so in violation of its fiduciary duties.").

**I.    The Bankruptcy Court Did Not Abuse Its Discretion in Holding Derivative Standing Unavailable to Appellants to Act for the Trusts.**

The Bankruptcy Court acted within its discretion in declining Appellants' request for derivative standing to assert the Trusts' rights in bankruptcy against the Manors. In arguing otherwise, Appellants fail to demonstrate that this decision rested on any clearly erroneous factual finding, errant legal conclusion, or misapplication of law to fact.

**A.    The Bankruptcy Court Appropriately Denied the Receiver's Request for Derivative Standing.**

The Bankruptcy Court appropriately denied the Receiver's request for derivative standing. Nevertheless, that court began from a mistaken premise that the Receiver *could* have authority to act against the Manors in bankruptcy, as functionally a party to the leases, by virtue of standing in the "shoes of the Trusts under non-bankruptcy law." Order at 7. (App. 29.) That premise was rooted in the "suite of powers and duties" in the Receivership Order. *See id.* (citing Receivership Order ¶¶ 6(a), (e), (j) [at App. 543-545]). (App. 29.) But it failed to account for the bankruptcy filing's primacy over the receivership proceedings.

When filed, the Trusts' Chapter 11 petitions vested the Bankruptcy Court, as a unit of the district court, with "exclusive jurisdiction" over "all the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate." 28 U.S.C. § 1334(e)(1). The estate's property includes "all

15

legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). "Section 541(a) was intended to sweep broadly to include all kinds of property, including tangible or intangible property," and "causes of action." *In re Kane*, 628 F.3d 631, 637 (3d Cir. 2010) (internal quotation marks omitted). Thus, the debtor-in-possession has exclusive control of estate property and is a fiduciary for all creditors and other stakeholders. *In re Marvel Entmt. Grp.*, 140 F.3d 463, 474 (3d Cir. 1998) ("[A]mong the fiduciary obligations of a debtor-in-possession is the duty to protect and conserve property in its possession for the benefit of creditors." (internal quotation marks omitted)). And the automatic stay prohibits any "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). Accordingly, courts have held that a bankruptcy petition effectively ends a pending receivership and vests all decision-making authority in the debtor-in-possession. *See Gilchrist v. Gen. Elec. Cap. Corp.*, 262 F.3d 295, 303-04 (4th Cir. 2001) (holding that relevant statutes' plain meaning meant that bankruptcy filing stayed district court receivership case).

In addition, under the Bankruptcy Code, "the Receiver qualifies as a 'custodian' obligated to turn over—and refrain from administering—property of the Trusts' or their estates." Order at 8 (citing 11 U.S.C. §§ 101(11)(A), 543(a)-(b)). (App. 30.) Section 543 requires a custodian—including the Receiver here—to

"deliver to the trustee any property of the debtor held by or transferred to such custodian, or proceeds, product, offspring, rents, or profits of such property, that is in such custodian's possession, custody, or control." 11 U.S.C. § 543(b)(1). This statute further bars the custodian from taking "any action in the administration of, property of the debtor, proceeds, product, offspring, rents, or profits of such property, or property of the estate, in the possession, custody, or control of such custodian, except such action as is necessary to preserve such property." *Id.* § 543(a).[10]

As a result, the Trusts' Chapter 11 filings superseded the Receivership Order's provisions that would purport to permit the Receiver to "stand in the shoes" of the Trusts. As of then, the Trusts' assets were vested in the debtors-in-possession, and the Receiver lost whatever authority it previously had over the Trusts' property, in favor of the bankruptcy proceedings. *See In re Lifeco Inv. Grp.*, 173 B.R. 478, 487 (Bankr. D. Del. 1994) (holding that receiver of creditor was not "party in interest" with ability to move for relief against debtor in bankruptcy, while identifying "no

---

[10] When a bankruptcy case begins, a receiver becomes a "federally superseded custodian of the bankruptcy estate," whose authority and obligations are "strictly circumscribed by statute." *In re Bodenheimer, Jones, Szwak, & Winchell, LLP*, 592 F.3d 664, 670 (5th Cir. 2009); *see also* 11 U.S.C. § 105(b) (barring a bankruptcy court from appointing a receiver in a case under title 11); *In re Plantation Inn Partners*, 142 B.R. 561, 563 (Bankr. S.D. Ga. 1992) ("[I]t is improper to vest a state-appointed receiver with the long-term obligations of a debtor-in-possession.").

statutory or judicial support to conclude that a creditor of a creditor has standing in a bankruptcy case").

In the end, the Bankruptcy Court properly concluded that provisions specific to receivers of property, together with the automatic stay, rendered "the Manor Properties [] off limits to the Receiver while they remain property of the Trusts' estates." Order at 10-11. (App. 32-33.) And in denying derivative standing, that court suitably faulted the Receiver for "fail[ing] to timely pursue another, more traditional means at her disposal for obtaining the kind of standing she now seeks." Order at 12. (App. 34.) This reference was to section 543(d) of the Bankruptcy Code, which allows a custodian such as the Receiver to move for an order excusing compliance with that section's prohibitions if the "interests of creditors . . . would be better served by permitting a custodian to continue in possession, custody, or control of such property." 11 U.S.C. § 543(d).

In these cases, this provision remains dormant. From December 2025 onward, the Receiver could have attempted to seek relief under section 543(d), but has not done so. The omission is notable when the Receiver now desires to take over the properties to prevent the alleged "irreparable harm and substantial risk resulting from the Manor Debtors' bankruptcy cases." Appellants' Br. at 42; *see id.* at 26 (arguing that "the relevant factors weigh in favor of compelling immediate assumption or rejection of the Leases"). The delay is unexplained. Appellants' brief

18

states merely that there was "no reason for the Receiver to have sought this standing earlier," adding that the current motion was filed only "*after* the Trusts' bankruptcy cases were dismissed." *Id.* at 49-50. But that assertion misses the point. As the Bankruptcy Court observed, the Receiver could have filed a motion under the Code's express terms at any time while the Trusts' cases were pending, even before their dismissal, rather than belatedly rely on notions of derivative standing.

That the Receiver roots the derivative-standing request in section 105(a) of the Bankruptcy Code only cements the case for affirmance, in two related ways.[11] Section 105(a) reflects that bankruptcy courts may "apply equitable principles in the administration of bankruptcy proceedings." *Cybergenics*, 330 F.3d at 567. That section also has an important limitation, as the Bankruptcy Court recognized: "It is hornbook law that § 105(a) 'does not allow the bankruptcy court to override explicit mandates of other sections of the Bankruptcy Code.'" *Law v. Siegel*, 571 U.S. 415, 421 (2014) (quoting Collier on Bankruptcy ¶ 105.01(2) (16th ed. 2013)); *accord, e.g.*, *In re Mallinckrodt PLC*, 2024 WL 206682, at *44 (Bankr. D. Del. 2024); *In re Bohn*, 2015 WL 2415412, at *9 (Bankr. D.N.J. 2015). For its part, "[s]ection 543 is explicit" in what it prohibits and permits. Order at 12. (App. 33.) That is one reason why the Bankruptcy Court permissibly denied the Receiver derivative standing.

---

[11] *See* 11 U.S.C. § 105(a) ("The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.").

The second is that the Receiver for months ignored this remedy specific to a *custodian* only to assert the putative rights of a *debtor* instead. As the Bankruptcy Court thus found, the Receiver's current motion was both untraditional and untimely. Lehigh and the Receiver have filed sundry motions, objections, and appeals in these bankruptcy cases. The Bankruptcy Court—most familiar with these active proceedings—reasonably concluded that the Receiver should have pursued this particular request earlier and differently. *See In re Energy Future Holdings Corp.*, 904 F.3d 298, 310 (3d Cir. 2018) (deferring to bankruptcy court's discretionary finding about whether movant had unduly delayed in seeking relief); *Baron & Budd, P.C. v. Unsecured Asbestos Claimants Comm.*, 321 B.R. 147, 166 (D.N.J. 2005) (reiterating that a bankruptcy court's "exercise[s] of discretion under § 105(a)" are reviewable only for abuse of discretion).

In short, having eschewed seeking section 543(d) relief, the Receiver cannot repackage that request as an invocation of a bankruptcy court's section 105(a) equitable powers. For these reasons, the decision below should be affirmed.

### B. Lehigh's Request for Derivative Standing Is Forfeited on Appeal and Was Appropriately Rejected.

The Bankruptcy Court held that Lehigh "flunks" the test for derivative standing because, as a mortgagee, "it has failed to establish that it can evict the Manors under Pennsylvania law." Order at 12. (App. 34.) On appeal, Appellants do not dispute this conclusion about Lehigh's lack of derivative standing, instead

objecting solely to the part of the Bankruptcy Court's derivative-standing ruling applying the Receiver. *See* Appellants' Br. at 47-50.

Any argument for Lehigh to obtain derivative standing is thus forfeited for purposes of appeal. *See In re Asbestos Prods. Liab. Litig. (No. VI)*, 873 F.3d 232, 237 (3d Cir. 2017) (reaffirming settled principle that arguments for reversal that are omitted from, or raised only in passing in, opening appellate brief are waived). In any event, the Bankruptcy Court did not abuse its discretion in rejecting Lehigh's attempt to bring these motions in the Trusts' place.

Because "Lehigh is not a 'party to' the Leases," the Bankruptcy Court properly held that "Lehigh lacks standing" itself to seek relief "under § 365(d)(2)." Order at 7. (App. 28.) That subsection permits a motion by "*any party to*" an unexpired lease of residential real property to compel its assumption or rejection.[12] 11 U.S.C. § 365(d)(2) (emphasis added); *see In re Riverside Nursing Home*, 43 B.R. 682, 684 (Bankr. S.D.N.Y. 1984) (holding that assignee of rents from the debtor did not have standing to bring motion under section 365(d)(2)); *see also In re James Wilson Assocs.*, 965 F.2d 160, 169 (7th Cir. 1992) (holding that mortgagee was not a "lessor" with standing to bring motion under section 365(d)(4)); *cf. In re Wilton*

---

[12] In another unchallenged holding, the Bankruptcy Court reiterated, as it had previously concluded, that the leases of property used to operate personal care homes constitute leases of residential real property. Order at 6. (App. 28.)

*Armetale*, 968 F.3d at 280-81 ("[A] litigant's 'standing' to pursue causes of action that become the estate's property means its *statutory* authority under the Bankruptcy Code, not its *constitutional* standing to invoke the federal judicial power.").

The Bankruptcy Court further held that Lehigh could not itself seek automatic-stay relief under section 362(d) to evict the Manors. *See* 11 U.S.C. § 362(d) (authorizing bankruptcy court to terminate, annul, modify, or condition the automatic stay, on "request of a party in interest"). In this regard, that court noted that Lehigh had provided no support for the "proposition that Pennsylvania law allows a mortgagee to evict a mortgagor's holdover tenant because the mortgagee has a security interest in rents owed by the tenant." Order at 11. (App. 33.) In other words, Lehigh's lift-stay request for the aim of eviction amounted to an attempt to assert other parties' rights, rather than its own—disentitling Lehigh to pursue a motion under this section as well. *See, e.g.*, *In re Alcide*, 450 B.R. 526, 535 (Bankr. E.D. Pa. 2011) (holding that, in bringing a section 362(d) motion, a party "must be asserting its own rights and not [those] of another entity"); *In re Hayes*, 393 B.R. 259, 268 (Bankr. D. Mass. 2008) (holding that movant lacked standing to pursue stay relief to assert a different party's rights); *see generally In re Vantage Drilling Int'l*, 603 B.R. 538, 545-46 (D. Del. 2019) (stating that concept of "party in interest" in bankruptcy does not entail standing "'to assert some right that is purely derivative

22

of another party's rights'" (quoting *Krys v. Off. Comm. of Unsecured Creditors (In re Refco, Inc.)*, 505 F.3d 109, 117 & n.10 (2d Cir. 2007)).

Appellants do not contest *any* of these determinations, which appear to have informed the Bankruptcy Court's denial of derivative standing to Lehigh as simply not a proper steward for these motions. That includes derivatively, putatively on the Trusts' behalf. In sum, Lehigh's claim is forfeited and otherwise unavailing.

## C. Appellants Also Failed to Demonstrate that the Proposed Motions Are Sufficiently Meritorious.

Appellants fare no better in contending that they have colorable claims on the underlying merits of their proposed motions against the Manors. *See* Appellants' Br. at 33-47. In response, the Trusts refer to and adopt by reference section A.1 of the Manors' answering brief.

## II. Appellants Have Not Satisfied the Unjust-Refusal Requirement of Derivative Standing.

The Bankruptcy Court did not address—and, given its analysis, had no reason to consider—the element that headlines Appellants' brief on appeal. That is whether the Trusts can be said to have unjustifiably refused to pursue the motions at issue. *See* Appellants' Br. at 29-33. Apparently contending that this element is met as a

matter of law, Appellants ask this Court to "remand this matter to the Bankruptcy Court with a direction to grant Lender and Receiver derivative standing." *Id.* at 2-3.

The existing record warrants an affirmance, and certainly does not compel a reversal. Insofar as Appellants contend that "[t]he Trusts have provided no explanation for their failure to pursue this relief on their own," *id.* at 25, that is largely because of how Appellants have proceeded. They never formally demanded that the Trusts pursue this particular relief or even lodged a procedurally proper request for derivative standing (instead slipping the request into a reply brief on a pending motion). The resulting evidentiary gaps preclude relief.

As a near-universal prerequisite, to obtain derivative standing, courts require a movant to demonstrate that the trustee unjustifiably refused a demand to pursue a proposed cause of action. *See In re Racing Servs., Inc.*, 540 F.3d 892, 900 (8th Cir. 2008); *Fogel v. Zell*, 221 F.3d 955, 965 (7th Cir. 2000); *La. World Exposition v. Fed. Ins. Co.*, 858 F.2d 233, 253 n.20 (5th Cir. 1998); *In re Gibson Grp.*, 66 F.3d 1436, 1438 (6th Cir. 1995); *In re STN Enters.*, 779 F.2d 901, 905 (2d Cir. 1985); *see also Cybergenics*, 330 F.3d at 560 (asking whether "the trustee has unreasonably refused to bring an avoidance claim," and approvingly citing authorities imposing a demand requirement).

Deciding whether a debtor's refusal is unjustified entails a cost-benefit analysis that weighs whether the resolution will be favorable enough to justify the

time and expense of litigation and delay in plan confirmation. *See In re Invitae Corp.*, 2025 WL 2538952, at \*10. "[I]ndeed, all of the derivative standing tests[] require that the movant prove all elements—[including] unjustifiability—to authorize derivative standing." *Id.*

Here, Appellants maintain that the Trusts should have (i) demanded payment of rent due under pre-2023 lease agreements, (ii) signed new lease agreements with the Manors, or (iii) ejected the Manors to bring in new and unspecified tenants "who are able to pay rent." Appellants' Br. at 29. Implying that any demand for this relief would have been futile, Appellants further contend that the Trusts and Manors had a conflict of interest that caused "then-joint bankruptcy counsel" to take positions that favored the latter. *Id.* at 31-32. As the requisite cost-benefit analysis, Appellants cite the sum total of rent allegedly due and assert that derivative standing will "prevent the harms sure to result from an unsuccessful reorganization." *Id.* at 32.

The Bankruptcy Court did not make any findings on these points, nor do Appellants cite record evidence that would sustain a finding of unjustified refusal. Resolving this factual question is reserved to the bankruptcy judge, for in a bankruptcy appeal, a "district court may not engage in independent fact finding." *In re Terry*, 543 B.R. 173, 177 (E.D. Pa. 2015) (citing *Nantucket Invs. II v. Cal. Fed. Bank,* 61 F.3d 197, 210 n.19 (3d Cir. 1995)). Indeed, Appellants' failure to create an evidentiary record cannot be squared with the fact-intensive endeavor of analyzing

the unjust-refusal element. In that inquiry, the court "'must also examine, on affidavit and other submission, by evidentiary hearing or otherwise, whether an action asserting such a claim is likely to benefit the reorganization estate.'" *In re G-I Holdings, Inc.*, 313 B.R. 612, 629 (Bankr. D.N.J. 2004) (quoting *In re STN Enters.,* 779 F.2d at 904) (cleaned up). "In so doing, a court must focus on 'a determination of probabilities of legal success and financial recovery in [the] event of success.'" *Id.* (quoting *In re STN Enters.,* 779 F.2d at 904). This burden is the movant's to meet. *See In re Invitae Corp.*, 2025 WL 2314691, at \*6.

Appellants also misconstrue the inquiry by focusing on what allegedly "is necessary to protect Lender's and Receiver's interests." Appellants' Br. at 38. The test for derivative standing does not key on the harm to two specific non-debtors.[13] Rather, in conducting the cost-benefit analysis, courts consider whether pursuing the claims will benefit the bankruptcy estate. *See In re AppliedTheory Corp.*, 493 F.3d 82, 86 (2d Cir. 2007) ("Requiring bankruptcy court approval conditioned upon the litigation's effect on the estate helps prevent committees and individual creditors from pursuing adversary proceedings that may provide them with private benefits but result in a net loss to the entire estate.").

---

[13] By way of contrast, a creditors' committee—the entity most commonly granted derivative standing, usually for avoidance actions—is impliedly deemed a fiduciary for all unsecured creditors. *See Westmoreland Hum. Opportunities, Inc. v. Walsh*, 246 F.3d 233, 256 (3d Cir. 2001).

If this Court were to reach the issue, the record does not substantiate a conclusion that forcing the Manors to pay millions of dollars in "cure" amounts to the Trusts, or else evicting them from the properties, would enhance, as opposed to imperil, the reorganization estates. On May 15, 2026, the Debtors filed their Joint Chapter 11 Plan of Reorganization (the "Plan") and accompanying Disclosure Statement that contemplate the Debtors' emergence from Chapter 11 and distributions to creditors.[14] The Debtors' goals in Chapter 11 are to confirm a plan of reorganization to exit bankruptcy as going concerns. The leasehold interests may well be among the most important components to effectuate that reorganization.

Striving to resolve "claims through a comprehensive plan of reorganization that will provide distributions to creditors" can justify a trustee's refusal to litigate. *In re Caesars Entmt. Operating Co.*, 561 B.R. 457, 469 (Bankr. N.D. Ill. 2016); *see also In re Murray Metallurgical Coal Holdings, LLC,* 614 B.R. 819, 836 (Bankr. S.D. Ohio 2020) (noting that proposal for derivative standing would unduly divert management's attention from plan-confirmation process); *Off. Comm. of Unsecured*

---

[14] For ease of reference, the Plan and Disclosure Statement are attached to the Declaration of Rachel Jaffe Mauceri, accompanying this brief. The Trusts respectfully request that the Court take judicial notice of these case-related filings. See Fed. R. Evid. 201(c)(2); *see also In re Motions for Access of Garlock Sealing Techs. LLC*, 488 B.R. 281, 302 (D. Del. 2013) (Stark, C.J.) ("Because the court 'may take judicial notice at any stage of the proceeding,' it is not necessary formally to supplement the appellate record with [appellant's] materials . . . ." (quoting Fed. R. Evid. 201(d)).

*Creditors of Sunbeam Corp. v. Morgan Stanley & Co. (In re Sunbeam Corp.)*, 284 B.R. 355, 375 (Bankr. S.D.N.Y. 2002) (denying derivative standing to pursue litigation that would impede reorganization and plan approval).

By contrast, permitting Appellants to press these motions against the Manors, if relief were granted, could undermine any possibility of reorganization. The Trusts would lose their sole tenants, without any guarantee of new revenue streams or operators for the personal care homes. Insurance and taxes on the properties could then go unpaid, and maintenance unattended. Appellants favor this outcome to avoid the "risk that the[] proposed Chapter 11 plan of reorganization will be unsuccessful." Appellants' Br. at 32. The answer is not to *ensure* that the Plan will be unsuccessful by destroying half the Debtors and imperiling the rest, but rather to allow the plan confirmation process to play out.

Indeed, the Trusts are pursuing some of the relief that Appellants claim to want, by negotiating prospective obligations from the Manors. *See id.* at 29. Last month, the Trusts and Manors moved in the Bankruptcy Court for permission to enter into use and occupancy agreements that, among other things, would set annual rent based on a fair-market value appearing in an appraisal that the Debtors obtained. *See Joint Motion Pursuant to 11 U.S.C. § 363 For Entry of an Order Authorizing the Debtors to Enter Into and Perform Under Use and Occupancy Agreements* (as

amended, the "U&O Motion").[15] If granted, the U&O Motion would document a mutually beneficial arrangement with fair-market rent that continues to obligate the Manors to pay all expenses associated with the use and occupancy of the leased premises. *See, e.g.*, *In re Sabine Oil & Gas Corp.*, 547 B.R. 503, 519 n.29 (Bankr. S.D.N.Y. 2016) (declining to consider creditor committee's request for derivative standing to pursue claims that debtors sought to settle "in the context of a plan of reorganization"); *Village of Overland Point, LLC v. Terra Bentley II, LLC (In re Terra Bentley II, LLC)*, 2011 WL 808190, at *6 (Bankr. D. Kan. 2011) (same); *see also In re Manley Toys Ltd.*, 2020 WL 1580244, at *8 (Bankr. D.N.J. 2020) ("Engaging in settlement discussions with opposing parties is evidence that the Liquidators are in fact pursuing the Claims.").

Moreover, the case record shows that the Manors recently paid more than $280,000 in rent to the Receiver, for remittance to Lehigh. *See* Sixth Interim Order ¶ I (May 29, 2026), Case No. 25-bk-15245, ECF 168. There is no pressing need to bring in a hypothetical "qualified, new operator" for the personal care homes. Appellants' Br. at 40. In any event, the record lacks any evidentiary basis for the assertion that Appellants "are prepared" to substitute the operators of these licensed and regulated businesses with brand new operators. *Id.*

---

[15] On July 10, 2026, the Debtors amended the U&O Motion. Another filing of which the Court may take judicial notice, the U&O Motion (as amended) is attached to the accompanying Declaration of Rachel Jaffe Mauceri.

Nor does any alleged conflict of interest form a basis for wresting control over the estates' legal decision-making from the Trusts. *See id.* at 31-32. As established, the Trusts had legitimate reasons not to pursue these motions, the most significant being the risk that relief would impede the chance of a successful reorganization. Represented by new counsel, the Trusts continue to disagree with Appellants' contrary position.

# CONCLUSION

This Court should affirm the Bankruptcy Court's order denying Appellants' request for derivative standing.

Dated: July 13, 2026

Respectfully submitted,

**ROBINSON & COLE LLP**

By: */s/ Rachel Jaffe Mauceri*
Natalie D. Ramsey (#41412)
Rachel Jaffe Mauceri (#209823)
1650 Market Street, Suite 3030
Philadelphia, PA 19103
Tel.: (215) 398-0600
nramsey@rc.com
rmauceri@rc.com

Eric Del Pozo
(*pro hac vice motion pending*)
One State Street
Hartford, CT 06103
Tel.: (860) 275-8200
edelpozo@rc.com

*Counsel for Whitehall Trust and*
*Saucon Trust*

## CERTIFICATE OF COMPLIANCE

The undersigned attorney certifies that this brief complies with the type-volume and typeface limitations in Federal Rule of Bankruptcy Procedure 8015(a)(7)(B) because this brief contains 7,062 words, excluding the parts of the brief exempted by Rule 8015, and because it has been prepared in a proportionally spaced 14-point font.

Dated: July 13, 2026

/s/ *Rachel Jaffe Mauceri*
Rachel Jaffe Mauceri

**CERTIFICATE OF SERVICE**

I, Rachel Jaffe Mauceri, certify that a true and correct copy of the foregoing document has been filed electronically, which accomplished service on all counsel of record, and is available for viewing and downloading from this Court's ECF System.

Dated: July 13, 2026

/s/ Rachel Jaffe Mauceri
Rachel Jaffe Mauceri